### In re GLEN IRON WORKS, Bankrupt.[1]

. (*District Court, E. D. Pennsylvania.* June 26, 1883.)

1. CORPORATIONS—INSOLVENCY—CAPITAL `SUBSCRIPTIONS—LIABILITY OF STOCK-HOLDERS—ATTACHMENT EXECUTION.

  The capital subscriptions of an insolvent private corporation, subscribed by stockholders, subject to assessment calls by a board of directors, remaining unpaid, and not called or assessed by the directors, are liable to judgment creditors of the corporation, and may be seized as well by·writs of attachment execution issued against the stockholders as by a creditors' bill.

2. SAME—SUBSCRIPTION NOTES—ASSESSMENTS AND .CALLS.

  Where the articles of association of a corporation provided for a capital stock of. $140,000, and stipulated that the stockholders should give their notes, without interest, for their respective subscriptions,which notes should not be liable at any time to an assessment for more than 50 per centum of their face, *held* that, in case of insolvency, the whole capital subscribed was liable to creditors; and the corporation having become bankrupt after 20 per centum of the capital had been assessed and paid in, *held*, that the stockholders were liable to creditors for their respective proportions of the whole unpaid amount subscribed.

3. ·SAME—BANKRUPTCY—LIEN OF PRIOR ATTACHMENTS.

  The corporation having been declared bankrupt, upon proceedings instituted subsequently to the service of such writs of attachment execution upon stockholders, and the unpaid capital having been awarded to the assignee, without prejudice to the rights of attaching creditors, and with provision for their intervention, upon the intervention of the attaching creditors, claiming the amount of their judgment out of the fund in the hands of the assignee, *held*, that the same was liable to the lien of the attachments, and should be awarded to the attaching creditors.

Exceptions to Register's Report.

The subscription list or articles of association of the Glen Iron Works, a corporation, provided, *inter alia*, for a capital of $140,000, and the subscribers agreed to give their notes therefor without interest; not to be liable at any time to an assessment of more than 50

---

[1] Reported by Albert B. Guilbert, Esq., of the Philadelphia bar.

per centum of their face, nor to an assessment of more than 20 per centum within 18 months after organization.

The notes were in the following form:

One day after date ——— promise to pay to the Glen Iron Works, or its order, the sum of ——— dollars, without defalcation, for value received.

This note is given for the full amount of ——— subscription to the capital stock of the said Glen Iron Works, and is subject to such assessments, from time to time, as the board of directors of the said Glen Iron Works may deem necessary: *provided*, such assessments do not, in the aggregate, exceed 50 per centum of the face of the above note, nor more than 20 per centum thereof within 18 months from the date of the same. All assessments made and paid to be credited hereon. It is further provided that this note is without interest; and that, in the event of the said The Glen Iron Works declaring dividend or dividends out of any profits made, the same shall be credited hereon in the proportion to which the number of shares of the capital stock standing to ——— name may entitle, until the full amount of the above note, by reason of credits by assessments and dividends aforesaid, shall be paid, when the same shall be returned to the subscriber or legal representatives, and in lieu thereof a paid-up certificate of stock be issued.

The stockholders, upon the call of the directors, having paid in 20 per centum of the amount of their subscriptions, Wilson and others, judgment creditors of the corporation, having a judgment for $25,000, on January 1, 1875, issued writs of attachment execution, and summoned as garnishees the respective stockholders and subscribers to the capital stock. An assessment of 30 per centum, in addition to the 20 per centum already paid in, had been called by the directors, but a rescinding resolution had been passed by the directors prior to the issuing of the attachments. Subsequently proceedings in bankruptcy were instituted, and the corporation declared bankrupt. On September 4, 1878, the whole amount of the unpaid capital was awarded to the assignee, subject to the rights of the attaching creditors, and with leave to them to intervene. See the elaborate opinion of CADWALADER, J., *Wilbur* v. *The Stockholders*, 35 Leg. Int. 346.

The register, upon consideration of the claim of the attaching creditors, reported that no lien existed by reason of the attachments, and awarded the fund to the general creditors, whereupon the attaching creditors excepted.

*P. K. Erdman, R. E. Wright, Jr.*, and *R. C. McMurtrie*, for the attaching creditors.

*W. D. Luckenbach* and *Edward Harvey*, contra.

BUTLER, J. The point decided on the assignee's petition was the responsibility of stockholders for unpaid subscriptions. No distinction was recognized between the 30 per cent., liable to assessment under the article of association, and the remaining 50. The company's insolvency being shown, the whole was declared due,—the failure of the company to assess, being treated as immaterial. The effect of outstanding attachments was not considered, the question being expressly reserved, unprejudiced by anything done or said. As the opinion filed shows, the decree rests upon the conclusion that

unpaid subscriptions are assets, available for the payment of debts; that while the company, during solvency, could recover only in pursuance of the articles of association, the limitations of this instrument became inoperative when insolvency occurred; and this latter fact appearing, and the entire amount being necessary to satisfy creditors, its payment should be required. The general subject is fully discussed in the opinion; and little need be added to what is there said, in disposing of the question now in hand.

On behalf of the general creditors it is asserted that the garnishees owned nothing when the attachments issued, that they were subject to *no liability whatever*, and that there was nothing, therefore, upon which the writs could operate. No other question is raised, and no other will, therefore, be considered.

My judgment is against the position stated. The obligation of the stockholders, enforced in the decree referred to, did not commence with the decree. It arose out of the act of subscribing, and continued from that time. To the extent of his subscription the stockholder at once became, and thereafter remained, contingently responsible. It was possible payment might never be required, but to all who dealt with the company it was an existing obligation, liable to enforcement when other means of payment should fail. The obligation (as respects creditors) was similar to that of guaranty. An assessment by the company, or decree by the court, was required to determine the necessity for resorting to it. If the company failed in its duty to assess, when it should, the assistance of the court might be invoked. Usually such assistance is invoked by bill. Why may it not be by this statutory attachment? In every method of proceeding (in such cases) the stockholder is treated as a debtor of the corporation. The obligation is directly to it, though for the benefit of creditors. Recovery, it is true, cannot be had without proof of insolvency; but this fact can as readily be determined in such proceeding, by attachment, as by bill. It need not be determined in advance of the writ. The process will bind whatever is embraced in the obligation, and upon proof of insolvency, recovery may be had. As before stated, this fact can safely and readily be determined in this proceeding. The attachment is of the nature of equity process, and the practice under it embraces the amplest means of discovery, and the fullest opportunity for administering justice to the parties. I cannot doubt, therefore, that the obligation of the stockholders might have been ascertained, declared, and enforced, in that proceeding, nor that it would have been, had not the company gone into bankruptcy, and thus transferred the inquiry to this court. I am at a loss to understand what defense the garnishees, or defendant, could have raised, with any prospect of success. The corporation being insolvent, the money was not simply owing, but presently due. I do not see any other question than the latter, that they could have presented; and this would have involved only the liability to immediate

payment. Money owing under every description of contractual obligation is subject to attachment. As before observed, the writ and practice under it, are of the nature of equity process and practice, devised for the purpose of reaching what a common-law writ will not, and thus avoiding the necessity of resorting to equity proceedings in such cases. I have said the company was insolvent. The fact does not seem open to doubt. The unsatisfied judgments and outstanding executions might well be regarded as sufficient *prima facie* evidence of it; but subsequent events, and the investigation of the court, put it beyond doubt. What constitutes insolvency, and how it must be shown, under the Pennsylvania statute of 1836,[1] relating to execution, are not questions in this case; and what the courts of this state have said on that subject is, therefore, unimportant. The term "insolvency," as here involved, signifies insufficiency of property to satisfy creditors; and this fact may be shown by any evidence that will satisfy the court, and, for the purposes of this case, at any time while the money is undisposed of.

Whether, however, the company was insolvent and the money presently due when the writs issued, I incline to think is unimportant. If it was not due, this fact, I am disposed to believe, would not affect the result. The liability, at least, existed, and this the writs probably attached, entitling the creditors to recovery when the money was subsequently declared due. This, however, need not be decided.

The denial of judgment in the assignee's suits at law, and in *Patterson* v. *Lynde*, 106 U. S. 519, [S. C. 1 Sup. Ct. Rep. 432,] was because of the absence of privity between the parties—without which, of course, such an action would not lie. In *Patterson* v. *Sinclair*, 2 Norris, 250, the supreme court of Pennsylvania recognizes the right to recover by attachment under circumstances such as exist here. I would refer also to *Ogilvie* v. *Ins. Co.* 22 How. 387.

The money covered by the attachment must be appropriated to them.

---

[1] The Pennsylvania act of June 16, 1836, § 35, provides that an attachment *sur* judgment may issue in the same manner and with like effect as in cases of foreign attachment; and the act of June 13, 1836, relating to foreign attachments, provides for the attachment of the goods and chattels, lands and tenements, of the defendant, in whose hands or possession soever the same may be.—[REP.